IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO JKB-16-363 |
| GERALD THOMAS JOHNSON, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

On January 25, 2018, following a roughly two-month jury trial, Defendants Gerald Johnson, Kenneth Jones, and Marquise McCants were convicted of multiple criminal counts, including racketeering conspiracy and conspiracy to distribute and possess with intent to distribute controlled substances. Defendants appealed, challenging the sufficiency of the Court's investigation into one juror's report that on the nineteenth day of trial, Defendants' associates had attempted to photograph jurors. The Court had excused that juror (Juror No. 4) and conducted off-the-record interviews of the other jurors through court staff, but the Court had declined to hold an evidentiary hearing on the incident. The United States Court of Appeals for the Fourth Circuit determined that Juror No. 4's allegations were sufficiently serious to require a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), and faulted the Court for not conducting a procedurally proper *Remmer* hearing. The Fourth Circuit remanded the matter with instructions to "conduct an evidentiary hearing in accordance with *Remmer*," to investigate Juror No. 4's allegations and determine whether the incident "prejudiced the jurors and affected their ability to impartially consider the evidence." (App. Mem. Op. at 3, ECF No. 876-1.)

1

Following remand, the Court ordered the parties to submit briefing regarding the scope and structure of the hearing. (*See* ECF Nos. 879, 897.) That briefing has been submitted and reviewed. (*See* ECF Nos. 909, 911, 918, 921.) This Memorandum analyzes the arguments raised in the briefing and outlines the Court's intentions regarding upcoming proceedings.

*I.     Analysis*

The parties largely agree regarding the basic contours of the pending hearing. They agree that the Government bears the burden of proving "that there exists no reasonable possibility that the jury's verdict was influenced by" the perception that Defendants' associates were photographing jurors. *United States v. Basham*, 561 F.3d 302, 319 (4th Cir. 2009) (internal quotation marks and citations omitted). They agree that all jurors (including alternates) should be called to testify and that the Court should defer decision on whether testimony from additional witnesses is necessary until after the jurors have testified. They also agree that the scope of the relevant testimony will be prescribed by Rule 606(b) of the Federal Rules of Evidence,[1] and that the Court will need to make an objective determination whether jurors would have been able to remain impartial under the circumstances.

However, they disagree as to the scope of the relevant inquiry and the appropriate method of questioning. Regarding scope, Defendants argue for an extremely restricted inquiry designed to ascertain only whether any "juror other than Juror No. 4 was aware of the allegation that defendants' associates were photographing, attempting to photograph, or threatening to

---

[1] Rule 606(b)(1) establishes:
> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Rule 606(b)(2) provides exceptions to Rule 606(b)(1): "A juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention [or]; (B) an outside influence was improperly brought to bear on any juror[.]"

2

photograph, the jurors." (Def. Mem. at 8, ECF No. 911.) Defendants assert that if the evidence reflects that any juror heard Juror No. 4 report that he believed the jurors had been photographed, then the Court must assume that the jury was hopelessly compromised. (*See id.* at 8–10.) The Government advocates a much less narrow inquiry. Citing Fourth Circuit precedent establishing that relevant *Remmer* considerations include "[1] the extent of the improper communication, [2] the extent to which the communication was discussed and considered by the jury, [3] the type of information communicated, [4] the timing of the exposure, and [5] the strength of the Government's case," the Government argues that the hearing should address not just what occurred, but also the impact of any improper contact on the jurors. (Gov't Mem. at 3, ECF No. 909 (quoting *Basham*, 561 F.2d at 320).) The Government emphasizes that the Court can steer clear of the ban on eliciting testimony on the jury's deliberations while still inquiring into the impact of Juror No. 4's report on other jurors.

The Court agrees with the Government. The Court does not deem it certain that any juror who heard Juror No. 4's report was necessarily compromised. It was evident to the Court at trial that Juror No. 4 believed he had been photographed and was so distressed by the situation that his ability to deliberate impartially was in doubt. The Court therefore made the determination that the safest course was to excuse Juror No. 4. (*See* 1/9/18 Trial Tr. at 162:6–163:12, ECF No. 778.) But it does not logically follow that the Court must assume that any juror who heard Juror No. 4 express his belief that jurors had been photographed was similarly distressed and therefore potentially compromised. To the contrary, a juror who heard Juror No. 4's report but doubted its credibility or seriousness may have been unaffected. That the Fourth Circuit recognized this possibility is evident from the fact that the Fourth Circuit ordered the pending *Remmer* hearing; the record is clear that three jurors heard Juror No. 4 state that jurors had been photographed (*see*

3

App. Mem. Op. at 7, 13), and if the Fourth Circuit agreed with Defendants that those jurors were undoubtedly compromised, it would have simply ordered a new trial. Instead, consistent with past directions that a court inquiring into the validity of a jury's verdict must "examine the entire picture," *Basham*, 561 F.3d at 319 (quoting *United States v. Cheek*, 94 F.3d 136, 142 (4th Cir. 1996)), viewing "the record practically and holistically," *Barnes v. Thomas*, 938 F.3d 526, 534 (4th Cir. 2019), the Fourth Circuit instructed the Court to conduct an assessment of the jury's ability to remain impartial. (*See* App. Mem. Op. at 16.) *C.f. Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.").

Therefore, while the Court agrees with Defendants that the final determination as to any juror's objective ability to remain impartial must reside with the Court, the Court also finds that testimony shedding light on the impact of Juror No. 4's report is clearly relevant evidence that will inform this determination. Though Rule 606(b) precludes questioning regarding the jury's deliberations, that Rule does not prohibit questions designed to elicit testimony regarding the contemporaneous impact of Juror No. 4's report. *See Basham*, 561 F.3d at 319 (The *Remmer* inquiry should determine an improper contact's "impact on the juror[s.]"); *Cheek*, 94 F.3d at 144 (finding external contact prejudicial in part based on juror's testimony that it left him "devastated and fearful"); *United States v. Edwards*, 188 F.3d 230, 236–37 (4th Cir. 1999) (approving of inquiry that sought testimony regarding "the juror's reaction to" the improper contact). Thus, questioning designed to reveal how reliable jurors believed Juror No. 4 to be, whether other jurors discussed his allegations, the impact of the Court's subsequent statement that no photos had been found, and how notable this one-off incident really was within the context of a two-month trial, is both permissible and necessary under Fourth Circuit precedent. Testimony on these issues will

4

enable the Court to "practically and holistically" assess the objective likelihood that individuals in the positions of the jurors would have been able to deliberate impartially, while safely avoiding testimony precluded by Rule 606(b). *Barnes*, 938 F.3d at 534.

Regarding the appropriate method of questioning the jurors, the Government argues that, given the sensitivity of the matters at issue, the Court should conduct the questioning. (*See* Gov't Mem. at 7–9.) The Government cites numerous decisions holding that questioning in a *Remmer* hearing may be conducted by a trial court, as long as defense counsel is provided the opportunity for input. (*See id.* (compiling cases).) Defendants do not contest that "in certain circumstances[,] questioning in a *Remmer* hearing may be conducted by the Court rather than counsel for the parties," but they argue that in the post-trial context, counsel should be given the opportunity to question jurors. (Def. Mem. at 12.) Defendants cite only *dicta* from Justice O'Connor's concurring opinion in *Smith*, 455 U.S. at 222, in support of their position.

The Court agrees with the Government that the Court can and should handle questioning the jurors. Though *Remmer* and its progeny undoubtedly require that defense counsel be "permitted to participate" in the evidentiary inquiry, 347 U.S. at 230, this participation requirement can be satisfied by means aside from allowing defense counsel to cross-examine jurors. Numerous Courts of Appeals have held that a "trial court has broad discretion over the methodology of inquiries into third-party contacts with jurors," and have approved of post-trial *Remmer* hearings wherein a trial court conducts the questioning. *United States v. Edelin*, 283 F. Supp. 2d 8, 14 (D.D.C. 2003) (quoting *United States v. Williams-Davis*, 90 F.3d 490, 498–99 (D.C. Cir. 1996)), *aff'd sub nom. United States v. Bostick*, 791 F.3d 127 (D.C. Cir. 2015); *see also United States v. Boylan*, 898 F.2d 230, 258–59 (1st Cir. 1990); *United States v. Calbas*, 821 F.2d 887, 896 (2d Cir. 1987); *United States v. Boscia*, 573 F.2d 827, 831–32 (3d Cir. 1978). The Fourth Circuit has

likewise acknowledged that a "district court has broad discretion in choosing how to handle a claim of juror bias [and] may deal with claims of juror misconduct as it feels the particular circumstances require." *Basham*, 561 F.3d at 321 n.9 (internal quotation marks and citations omitted). Additionally, in *Edwards*, the Fourth Circuit approved of the district court's decision to personally conduct an inquiry into a juror's impartiality without permitting questioning from defense counsel, explaining that *Remmer* does not "require in all cases that counsel be permitted to *voir dire* the juror whose impartiality is in question." 188 F.3d at 236 n.2.

The inquiry in this matter is extremely sensitive, and the danger that questioning could stray over the Rule 606(b) threshold will be ever-present. In such circumstances, where one improper remark runs the risk of compromising a juror's testimony and frustrating the *Remmer* inquiry, the Court deems it advisable to retain control. *C.f. Barnes*, 938 F.3d at 534 (describing how the decision to have counsel conduct questioning "led to confusion during the evidentiary hearing and lengthy colloquies between the parties and the magistrate judge"). This accords with the common practice among trial judges of personally conducting sensitive pre-trial *voir dire*, which the undersigned favors. During pre-trial *voir dire*, it is not uncommon for highly sensitive issues to arise—whether a relevant history of drug abuse, a family tragedy with similarities to the fact pattern at issue, a private medical concern, or another similarly charged matter. In such circumstances, where an inappropriate question could prejudice the whole process, many trial judges consider it wisest to personally handle questioning pursuant to Rule 24(a)(1) of the Federal Rules of Criminal Procedure. *See United States v. Baylor*, 537 F. App'x 149, 158 (4th Cir. 2013) (noting the district court's authority to conduct pre-trial *voir dire* and decide what questions will be asked). The Court will follow that familiar practice here.

The Court will afford counsel every reasonable opportunity for involvement in formulating the questioning. To that end, the Court will solicit a joint submission from the parties setting forth proposed questions for each juror. At the hearing, after asking these questions and pursuing any other inquiries that occur to the Court, the Court will solicit counsel's input regarding additional lines of questioning. Only once counsel has had the opportunity to propose such additional questions and the Court has conducted reasonable follow-up inquiry will the Court excuse a given juror from the witness stand. This procedure will protect the integrity of the *Remmer* hearing, while also ensuring Defendants the process to which they are entitled.

## II.   *Upcoming Proceedings*

With these issues resolved, the Court provides the following outline of how events in this matter will proceed. Following the entry of this Memorandum and Order, the Court will enter a separate order arranging for the Clerk to subpoena every juror in this matter (including alternates), with the exception of the juror who was excused on November 27, 2017. The order will direct the United States Marshals Service to serve each juror with a subpoena and a copy of the order. The order will also instruct the jurors not to discuss or research the matter in advance of the hearing.

Separately, the Court will enter an order directing the Clerk to subpoena Court Security Officer (CSO) Ronald Beverly, the Deputy Marshal(s) who investigated Juror No. 4's allegations, Courtroom Deputy Camille Powell, and former Law Clerk Andrew Jaco. These individuals will be made available for testimony should the Court determine that further development of the record is necessary after the jurors testify. To facilitate that end, the Government is DIRECTED to identify the Deputy Marshal(s) who investigated the incident. The Government is also DIRECTED to produce any investigative report those individuals prepared regarding the incident.

7

In the coming weeks, the Court will circulate a list of proposed questions to the parties, and enter an order requiring the parties to file a joint submission offering their comments and proposed additions and subtractions. Following this submission, the Court will set in a pre-hearing conference to resolve any outstanding issues.

At the outset of the hearing, Juror No. 4 will be called to testify. Questioning will be conducted by the Court. The Court will ask questions formulated by the Court in consultation with the parties. The Court will pose appropriate follow-up questions, if any. Following the conclusion of the pre-planned questioning, the Court will privately confer with counsel regarding the need for further questioning of Juror No. 4. If persuaded that additional questions are appropriate, the Court will pose them. After Juror No. 4 is excused, the other jurors and alternates will each be questioned in the same manner, although the questions posed to the other jurors (and alternates) will no doubt be different from those put to Juror No. 4. During the proceeding, the jurors will be sequestered and separated to ensure that there is no improper discussion among them.

At the conclusion of the jurors' testimony, the Court will determine whether it is necessary to further develop the facts of the incident with testimony from CSO Beverly and the Deputy Marshal(s). At the conclusion of any such testimony, the Court will determine whether Ms. Powell and Mr. Jaco should be called to testify. Once all testimony is complete, the Court will hear argument from counsel regarding whether the events at issue "prejudiced the jurors and affected their ability to impartially consider the evidence." (App. Mem. Op. at 3.)

Defendants will be permitted to attend the *Remmer* hearing, and the Government is accordingly DIRECTED to prepare writs, notices, and "come up" letters as appropriate.

Counsel are again ORDERED to have no contact, direct or indirect, with any person who served as a juror or an alternate juror in this case without the express permission of the Court. *See* Local Rules 107.16 and 211 (D. Md. 2018).

DATED this 26 day of February, 2021.

BY THE COURT:

James K. Bredar
Chief Judge