IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-16-0363 |
| GERALD THOMAS JOHNSON, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Before the Court is Defendants' joint motion for reconsideration of this Court's February 26, 2021 Order (ECF No. 922) insofar as it held that questioning in the forthcoming *Remmer* hearing will be conducted by the Court, rather than the parties. (*See* ECF No. 965.) On an April 9, 2021 status call, the government waived its right to respond, so Defendants' motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion will be DENIED.

### I. Background

On February 26, 2021, this Court issued an Order outlining various logistical and substantive procedures for the forthcoming *Remmer* hearing, which is to be held beginning on May 10, 2021. (ECF No. 922.) That Order established two propositions that are salient here. First, due to the sensitive nature of the *Remmer* inquiry, the Court concluded that it, rather than the parties, would conduct the questioning of the former jurors at the hearing. (*Id.* at 5.) Second, the Court *sua sponte* issued subpoenas for the former jurors who would be required to testify at the hearing. (*Id.* at 7.) Subsequent orders implementing the February 26 Order also elaborated that

1

these persons would be compensated as jurors for purposes of attending the hearing. (ECF No. 924 at 2.)

However, after consultation with the Administrative Office of the United States Courts, this Court determined that continuing to classify the former jurors as jurors *for purposes of subpoena and compensation* was inaccurate. (ECF No. 955 at 1.) The Administrative Office noted that the status of a person as a juror, in the administrative sense, was heavily circumscribed by the Jury Selection and Service Act (the "JSSA"), 28 U.S.C. § 1861 *et. seq.* For instance, jurors may appear only by summons (not subpoena) and may be compensated only when appearing "pursuant to [the JSSA]." *See id.* §§ 1866, 1871.

Considering this, the Court concluded that classifying the former jurors as witnesses—for limited administrative purposes only—was more prudent and expeditious than classifying them as jurors. (ECF No. 955 at 1.) Because the burden lies with the government in the upcoming hearing, the Court classified the former jurors (whose testimony is necessary for the government to meet that burden) as government witnesses. (*Id.*) However, as this classification was purely for administrative functions, the government was directed: "[o]ther than ensuring the appearance of the former jurors, the government shall have no contact and no case-related communications with them." (*Id.* at 2.) The Court reiterated this directive in subsequent orders. (ECF No. 959 at 1.)

Defendants initially objected to the classification of the former jurors as government witnesses even for these limited administrative purposes. (*Id.*) The Court directed Defendants to file formal briefing on this issue by April 6, 2021. (*Id.*) Rather than do so, Defendants filed the instant motion on April 7.

2

## *II.   Analysis*

In their motion for reconsideration, Defendants do not challenge the administrative reclassification of the former jurors as government witnesses. Instead, they argue that this reclassification is "inconsistent with its treatment of the jurors for other purposes—*i.e.*, the Court's ruling that it, rather than the parties, will examine them in the hearing." (Mot. Recons. Mem. Supp. at 2, ECF No. 965-1.) However, Defendants provide no reason why treating jurors as witnesses for *administrative* purposes fundamentally alters their *substantive* role at the hearing or this Court's reasoning in its prior opinion. (ECF No. 922.) The simple fact is that the former jurors have, in the *Remmer* context, been thrust into a hybrid role, serving both as jurors and as witnesses regarding events related to their time and status as jurors. Any argument to the contrary ignores reality, including the parties' extensive briefing on the applicability of Federal Rule of Evidence 606 (titled "Juror's Competency *as a Witness*") to the forthcoming hearing. (*See* ECF Nos. 909, 911, 918, 921.) The Court's prior analysis did not turn on formalistic labels, but on the "extremely sensitive" nature of the required *Remmer* inquiry and the way that inquiry is circumscribed by Rule 606. (ECF No. 922 at 5–7.) The administrative reclassification of the former jurors in no way changes the applicability of those two imperatives.

The only case Defendants cite in support of reconsideration, *United States v. Moten*, only reinforces the propriety of the Court's decision to handle questioning of the former jurors. 582 F.2d 654 (2d Cir. 1978). In *Moten*, the Second Circuit remanded allegations of juror misconduct for a *Remmer* hearing, finding that the district court "erred in denying *completely* Moten's motion for permission to conduct some form of inquiry." *Id.* at 666 (emphasis added). However, while the Second Circuit held that "an inquiry of the jurors must be permitted," it also clearly "le[ft] to the district judge's sound discretion whether *he should conduct the questioning personally.*" *Id.*

3

at 667 (emphasis added). The need for this discretion in *Moten* pinpointed similar concerns to those that animated this Court in formulating its own view on questioning the former jurors. These concerns included that:

> Human nature is such that some jurors, instead of feeling harassed by post-trial interviewing, might rather enjoy it, particularly when it involves the disclosure of secrets or provides an opportunity to express misgivings and lingering doubts. A serious danger exists that, in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts. Thus, supervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b).

*Id.* at 665. Thus, nothing in *Moten* restricts this Court's "broad discretion over the methodology of inquiries into third-party contacts with jurors," and requires the Court to turn questioning over to the parties. (*See* ECF No. 922 at 5.) Even if it did, it is not clear that a single decision would stand up to the significant weight of contrary authority, including more recent caselaw on the subject from the Second Circuit. (*Id.* (compiling cases); *see also United States v. Calbas*, 821 F.2d 887, 896 (2d Cir. 1987) ("[W]e find no substance in Calbas's suggestion that the district court acted improperly in conducting a limited inquiry and in failing to allow counsel to participate in the questioning of jurors. . . . The court wisely refrained from allowing the inquiry to become an adversarial evidentiary hearing, so as to minimize intrusion on the jury's deliberations."). Therefore, the Court will construe Defendants' remaining arguments as contending not that it *must* permit them to ask questions at the *Remmer* hearing, but merely that it *should* do so.

On this score, Defendants' primary contention is that in our judicial system, "adversarial testing [of witnesses] should be dispensed with only where necessary to protect some countervailing interest." (Mot. Recons. Mem. Supp. at 3.) While this may be so, Defendants'

argument fails to appreciate the important interests underlying Rule 606. In addition to its evidentiary function, Rule 606 serves the important public policy goal of mitigating "harassment of former jurors by losing parties as well as the possible exploitation of disgruntled or otherwise badly-motivated ex-jurors." *See Tanner v. United States*, 483 U.S. 107, 124–25 (1987). These concerns exist only *after* the jury has rendered a verdict, making post-verdict *Remmer* hearings subject to strong interests in favor of dispensing with adversarial questioning. These concerns are not mitigated simply because "the 'unusual' circumstance of the jurors' role as fact-finders no longer obtains." (Mot. Recons. Mem. Supp. at 5.) In fact, these concerns exist only once jurors have discharged their fact-finding function by rendering a verdict. *Hurst v. Joyner*, 757 F.3d 389, 394–95 (4th Cir. 2014) (explaining that the "common-law rule, now codified in Federal Rule of Evidence 606(b), prohibits juror testimony to impeach the verdict, subject to three exceptions."). The continued, and in fact increased, salience of countervailing interests that warrant dispensing with adversarial questioning has been repeatedly reaffirmed by courts that have conducted or approved of court-controlled questioning in post-verdict *Remmer* hearings. (ECF No. 922 at 5 (collecting cases).)

Second, Defendants appear to suggest that the Court has decided to "treat the jurors as 'government witnesses,'" without qualification. However, they point to nothing in the Court's prior orders that treats the former jurors as government witnesses for anything beyond limited, administrative purposes.[1] Further, other than referencing the Court's own mischaracterized words, Defendants point to no way in which the Court's Order on reclassification substantively affects

---

[1] In its two prior Orders, this Court has referred to the former jurors as "government witnesses for purposes of ensuring attendance and payment of fees" (*see* ECF No. 955), and as "government witnesses for administrative purposes only (*see* ECF No. 959 at 1.) Although the latter Order has an extraneous reference to "government witnesses" without a caveat, it (1) cites the former Order and (2) is followed immediately by the more specific reference noted in the prior sentence, dispelling any implication of a substantive decision to treat the former jurors as government witnesses.

5

the former jurors' role in the upcoming hearing. By Defendants' own argument, party witness testimony is "presented through examination by its sponsor, followed by cross-examination by the opposing party." (Mot. Recons. Mem. Supp. at 2.) The Court's orders have made clear that the forthcoming *Remmer* hearing will bear none of these hallmarks. As explained further below, although the Court will propound the questions at the hearing, the parties will be able to participate equally in their formulation. *Infra* at 8. This means, *inter alia*, that Defendants will not be limited by the scope of the government's questions. *Cf.* Fed. R. Evid. 611(b). In sum and substance, therefore, the hearing will far more resemble *voir dire*, a process where questioning is most commonly (and always in this Court) handled by the judge. (*See* ECF No. 922 at 6.) In the face of this far more appropriate analogy, Defendants offer no substantive reason for concluding that the jurors will be treated as government witnesses *at the hearing*, such that this Court's order related to the substance of the hearing should be reconsidered.

Last, Defendants again argue that the Court can fulfill its supervisory function without controlling questioning because "the parties will certainly object to questioning that runs these risks [of violating Rule 606], and the Court is capable of preventing improper questioning even without objections." (Mot. Recons. Mem. Supp. at 5; *see also* ECF No. 911 at 13 (arguing for party examination because "[t]he Court is perfectly capable of ensuring that questioning by the parties does not stray from the very narrow scope of relevant inquiry here").) The Court remains convinced that the sensitive nature of the inquiry requires it to be a proactive, rather than merely reactive, gatekeeper of the questions posed at the hearing.

As explained above, Rule 606(b) is not only an evidentiary standard, but also a tool for safeguarding the jury from undue harassment by litigants who hope to impeach a verdict. *See Hurst*, 757 F.3d at 394 (emphasis added) ("The privacy and protection concerns that *inevitably*

6

arise when one seeks to impeach a jury's verdict, however, are also well established."). In order to safeguard this "interest of protecting the jury system and the citizens who make it work, [R]ule 606 should not permit *any inquiry* into the internal deliberations of the jurors." *Tanner*, 483 U.S. at 124–25 (emphasis added). This stringent standard means that "the danger that questioning could stray over the Rule 606(b) threshold" (*see* ECF No. 922 at 6) remains, even if that questioning is rebuffed by post-hoc evidentiary objections. *See United States v. Birchette*, 908 F.3d 50, 55–56 (4th Cir. 2018) ("There are good reasons for limiting the parties' interactions with jurors after the verdict. . . . Post-verdict interrogations have at least the potential to stretch out or to turn adversarial, and thereby undermine the no-impeachment presumption.").

Further, evidentiary objections do not eliminate other risks, such as the risk that an "improper remark [will] compromis[e] a juror's testimony and frustrat[e] the *Remmer* inquiry." (ECF No. 922 at 6.) While the Court acknowledges that it is not infallible, and that these risks will still be present to some degree even if it conducts the questioning, the extremely sensitive nature of the *Remmer* inquiry compels the Court to mitigate these risks to the furthest extent possible. None of Defendants' arguments change this Court's belief that the most effective way to do so is by retaining control of the questions posed to the former jurors.

Importantly, Court-controlled questioning in no way impairs Defendants' "vital interest in learning everything there is to know about the circumstances here."[2] (Mot. Recons. Mem. Supp. at 4 (internal quotation marks omitted).) While *Remmer* requires that "all interested parties" must be "permitted to participate" in the forthcoming hearing, it is abundantly clear that this standard does not mandate adversarial questioning of the former jurors. *Remmer v. United States*, 347 U.S.

---

[2] It is not clear whether this argument repudiates Defendants' prior position that "everything there is to know" is limited only to the "factual question [of] whether any of the remaining jurors were aware of Juror No. 4's report." (*See* ECF No. 911 at 10.). This potential conflict is of no moment, however, as the procedures set forth for the hearing fully protect Defendants' fact-finding interest regardless of scope.

7

227, 230 (1954); *(see also* ECF No. 922 at 5.) Instead, both Defendants' right to participate and the importance of developing the "entire picture" are fully assured here by the parties' two-fold involvement in the questioning process. *See United States v. Cheek*, 94 F.3d 136, 142 (4th Cir. 1996) (quoting *Remmer v. United States*, 350 U.S. 377, 378 (1956)) (explaining that in a *Remmer* hearing, a "court must examine the 'entire picture,' including the factual circumstances and the impact on the juror").

First, in anticipation of the hearing, the Court will provide the parties with a proposed list of questions and solicit additions or modifications to that list.[3] Second, after these initial questions are propounded to each former juror, the Court will entertain any follow-up questions requested by the parties and ask any that it deems appropriate and helpful to the process. (ECF No. 922 at 6.) Only once all appropriate follow-up questioning has been completed will the Court excuse a former juror from the witness stand. (*Id.*) While the Court obviously retains discretion to determine which questions are useful and appropriate, this arrangement is functionally similar to a hearing at which questioning is conducted by the parties, *see, e.g.*, Fed. R. Evid. 611, with the difference that the Court's discretion will be exercised before, rather than after, a question is posed to a former juror. Undoubtedly, counsel will not have the freedom to direct the examination they would if asking the questions themselves, but this is necessary to minimize the adversarial tone of this unique proceeding. In sum, the significant prophylactic interests served by conducting the hearing in this manner readily warrant this adjustment.

In the end, Defendants' motion provides no grounds to conclude that the treatment of the former jurors as government witnesses for administrative purposes requires this Court to relinquish

---

[3] In its initial Order, the Court indicated that it would "solicit a joint submission from the parties setting forth proposed questions," rather than promulgating an initial set of questions. (ECF No. 922 at 6.) The Court's new proposal, which has been raised with the parties previously, does not materially alter the parties' role in this process, and neither party has objected to this change.

questioning of those jurors to the parties. Similarly, their motion provides no reason why this change should lead the Court, in its discretion, to reconsider its decision to question the jurors. This hearing undoubtedly places the parties, the Court, and most importantly the former jurors in an unusual procedural posture. There is simply no "juror acting as a witness at a post-verdict *Remmer* hearing" statute that readily cuts this administrative Gordian knot. However, absent the parties identifying some material *substantive* impact that results from this Court's resolution of these administrative complexities, the Court will not reconsider its prior view as to the substance of the hearing, which was made upon consideration of full and thoughtful briefing by the parties.

The Court reiterates the narrowness of its Order classifying the former jurors as government witnesses solely "for purposes of ensuring attendance and payment of fees under 28 U.S.C. § 1821." (ECF No. 955.) The government's attendance to these administrative niceties in no way permits it to have substantive contact with the former jurors. (*Id.* ("Other than ensuring the appearance of the former jurors, the government shall have no contact and no case-related communication with them.").) To ensure its adherence to this requirement, the government has filed a protocol outlining its efforts to disaggregate its administrative and substantive functions with respect to the upcoming hearing. (*See* ECF No. 972). That protocol makes clear that "[c]ommunication with and reimbursement of former jurors has been, and will continue to be, handled entirely by the United States Attorney's Office Victim-Witness Unit," who will adhere to this Court's directive to "not have substantive, case-related communications with any former jurors." (*Id.* at 2.) The handling of logistical functions by this unit also means that "[p]rosecutors in the United States Attorney's Office, including undersigned counsel, have not had, and will not have *any* communications with former jurors." (*Id.* (emphasis in original).) Subject to objections by Defendants at today's status conference, the Court tentatively endorses the government's

proposed approach as an effective means for resolving the logistical challenges of this hearing with the least possible impact on its substance.

For all these reasons, the Court finds no reason to reconsider any aspect of its February 26, 2021 Order outlining the scope of the forthcoming *Remmer* hearing.

### III.   Conclusion

For the foregoing reasons, Defendants' Joint Motion for Reconsideration (ECF No. 965) is DENIED.

DATED this 13 day of April, 2021.

BY THE COURT:

James K. Bredar
Chief Judge