IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIM. NO. JKB-16-0363** |
| **GERALD THOMAS JOHNSON,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Before the Court are the Parties' proposed additions and modifications to the questions that will be asked during examination of the former jurors at the forthcoming *Remmer* hearing. (ECF Nos. 989, 990.) Having considered the Parties' briefing, the Court will modify the questions to the extent discussed below. In its discussion, the Court will refer to the numbered points it originally published to the Parties (ECF No. 983) as "Question [#]." It will address modifications to the text of those Questions under headers for each individual question. To the extent the Parties have proposed additional, independent questions, they will be referred to as "[Party's] Proposed Additional Question [#]." Proposed Additional Questions include both questions explicitly requested by the Parties, and those the Court construes as reasonably requested by the Parties' briefing. The Court will begin by addressing the Questions and Proposed Additional Questions to be addressed to the Juror No. 4 who was excused on January 9, 2018 ("Juror No. 4"). The Court will then turn to the Questions and Proposed Additional Questions for the remaining jurors and alternates.

Attached to this Memorandum and Order are the final lists of initial questions to be posed to the jurors. Nothing in this Order diminishes the Parties' ability to propose additional, appropriate

1

follow-up questions at the *Remmer* hearing after the Court has posed these initial questions and any follow-up questions the Court itself deems necessary to the *Remmer* inquiry. (*See* ECF No. 973 at 8.)

### I. Modifications to Questions For The Juror No. 4 Who Was Excused on January 9, 2018

**Question 1.** *Between November 27, 2017, and January 9, 2018, until you were excused, you served as a juror in the trial of United States v. Gerald Johnson, et al., Case No. JKB-16-0363. Prior to November 27, you served as an alternate juror in the same matter. I was the judge who presided during that trial. Do you remember your service as a juror in that case?*

During the May 4, 2021 status hearing, counsel for Defendant McCants suggested that the former jurors may be confused by the presence of attorneys at the *Remmer* hearing who had not been present during the Defendants' initial trial. The Court agreed that identifying the attorneys present and their affiliations with the parties in the case will eliminate any potential confusion by the former jurors as to the identities of the persons in the courtroom during the hearing. The Court will also add additional language in Question 3 that establishes the role of the attorneys during the hearing. Question 1 will now read:

> Between November 27, 2017, and January 9, 2018, until you were excused, you served as a juror in the trial of *United States v. Gerald Johnson, et al.*, Case No. JKB-16-0363. Prior to November 27, you served as an alternate juror in the same matter. I was the judge who presided during that trial. Also here with us today are attorneys who represent the parties in this case:
>
> - AUSA Martinez and AUSA Hoffman, representing the Government;
> - Mr. Enzinna and Mr. O'Toole, representing Mr. Johnson;
> - Mr. Bussard, representing Mr. Jones; and
> - Ms. Wicks and Mr. Nieto, representing Mr. McCants.
>
> Do you remember your service as a juror in that case?

**Question 2.** *Do you confirm that you were serving as Juror No. 4 on January 9, 2018?*

No modifications are proposed by the parties.

2

**Question 3.** *The trial lasted for many weeks. On January 9, 2018, while the trial was under way, an event occurred which caused the trial to briefly pause. In the presence of at least some of the rest of the jurors and alternates, you may have expressed concern that persons, perhaps the defendants' family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. A few minutes later, you were interviewed by court staff about that event. You were later excused from further service on the jury. Today, I have some questions for you about this matter.*

"Question 3" is a background statement to provide context to Juror No. 4 as to the purpose of the *Remmer* hearing. While Defendants "do not object to the Court making an introductory statement" they argue that, as formulated, this statement may decontextualize the inquiry in two key ways. (Def. Resp. at 2.) First, they state that "[a]t the time of the Photo Incident, the jurors in this case had been subjected to weeks of 'graphic' and 'gruesome' evidence" and had raised concerns with the Court about certain actions by Defendants, such as their passing of notes and looking at the jury. (*Id.*) They contend that the Court's omission of these details fails to fully establish the context in which the events of January 9, 2018 took place. However, they do not provide the Court with any specific language they believe should be included in Question 3 to address these prior events.

Second, they take issue with the Court's characterization of Juror No. 4's reaction when he believed that photos were being taken and his report to other jurors, arguing they are described as "far more restrained and measured than they were." (*Id.* at 3.) They suggest a modification of the third sentence of Question 3 to more accurately portray Juror No. 4's reaction. (*Id.*)

The Court agrees that it should expand this question to provide additional context to Juror No. 4. However, highlighting the evidence introduced at trial may unduly muddy the *Remmer* inquiry by implying that a juror's reaction to evidence may be pertinent to a determination of bias. *See* Fed. R. Evid. 611. Also, this evidence is less likely to have been forgotten by the jurors, given both its nature and its centrality to the government's case in chief. On balance, the Court finds

3

that asking the former jurors to consider the nature of the evidence adduced at trial is more likely to bring confusion than clarity to the hearing. *Id.* (requiring courts to control the mode of questioning in order to "make [] procedures effective for determining the truth").

To Defendants' second point, while the Court agrees that former Juror No. 4's potential description of the incident as "really serious" warrants mentioning, the only evidence of that statement in the record is hearsay (and, arguably, hearsay within hearsay). *See* Jan. 9, 2018 Tr. at 154:24. Therefore, the Court finds it inappropriate to affirmatively ascribe these words to Juror No. 4.

Last, and as noted above, the Court has incorporated additional language into Question 3 that establishes the role of the attorneys present at the hearing as a corollary to their introduction in Question 1. Accordingly, Question 3 will be modified to read as follows:

> The trial lasted for many weeks. During the trial, some concerns were raised, such as Defendants passing notes, looking at jurors, and having access to juror information through the juror selection process, known as *voir dire*. The Court addressed these concerns without pausing the trial.
>
> Then on January 9, 2018 an event occurred which caused the trial to briefly pause. In the presence of at least some of the rest of the jurors and alternates, you may have expressed concern that persons, perhaps the defendants' family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. We understand you may have thought this was a significant event and may have said something to the effect of "this is really serious" to your fellow jurors. A few minutes later, you were interviewed by court staff about that event. You were later excused from further service on the jury. Today I have some questions about January 9, 2018.
>
> The lawyers I introduced are not here to ask you questions—only the Court will do that—but they are here to represent the interests of their clients and to propose follow-up questions that the Court may or may not ask you in its discretion.

**Question 4.** *Do you remember this event?*

No modifications are proposed by the parties.

4

**Question 5.** *Do you recall making statements indicating your belief or concern that persons might be taking pictures of jurors?*

No modifications are proposed by the parties.

**Question 6.** *Please tell us what you remember seeing and saying that day.*

No modifications are proposed by the parties.

**Question 7.** *Did you participate in discussion among the jurors about the possibility of picture-taking? Do you remember what was said by you and by others? Please tell us what you do remember about those discussions.*

The government believes that the second sentence in Question 7 is unnecessary as "during the upcoming hearing, the Court will hear directly from the other jurors regarding what they may have seen, heard, and said regarding the observation by Juror No. 4 of possible picture-taking." (Gov't. Resp. at 1.) Given this, they believe it is "unnecessary to elicit hearsay testimony from an unreliable witness." (*Id.*) They would, therefore, substitute the second sentence of Question 7 for one that asks whether Juror 4 "t[old] other jurors about [his] belief or concern that persons might be taking pictures of jurors." (*Id.*) The Court declines to adopt the Government's modification.

Given the significant time that has elapsed since the events underlying this hearing, the Court believes that Juror No. 4's testimony may be valuable even if it lacks traditional indicia of reliability. It appears that this event was far more significant for Juror No. 4 than the remainder of the jury, and he may therefore have a more robust recollection of the events of that day. Because Juror No. 4 will be the first to testify, any recollection he does have regarding what was said by other jurors can also be verified by those jurors. Further, if those jurors testify contrary to Juror No. 4's recollection, Juror No. 4's testimony regarding what he heard them say can be discounted in the ultimate *Remmer* analysis.

5

Having declined to modify the question as written, the Court also declines to supplement it with the Government's proposed modification as it covers the same ground as Question 6, given Juror No. 4 was excused on January 9th.

## II. *Proposed Additional Questions For The Juror No. 4 Who Was Excused on January 9, 2018*

The Court construes Defendants' briefing as raising seven Proposed Additional Questions for Juror No. 4. Because Defendants do not put forward specific language for these questions, the Court will rule more generally on the types of inquiry sought by Defendants.

**Defendants' Proposed Additional Question 1.**

Defendants' first addition, framed as a corollary to the Court's Question 2, is that "Juror No. 4 should be asked whether he has discussed his service as a juror in this case with anyone (including other jurors) since the trial." (Def. Resp. at 2.) The Court declines to ask this line of questions of Juror No. 4 given the juror protection interests enshrined in Federal Rule of Evidence 606. *See Tanner v. United States*, 483 U.S. 107, 124–25 (1987). Admittedly, requiring the former jurors to appear at this hearing has already intruded upon these interests, but the Court will not further vitiate the protection of Rule 606 to identify witnesses who, at best, can provide second-hand and incomplete knowledge of the relevant issues. On balance, the Court finds that the attenuated nature of potential testimony available from these persons (if they exist), does not justify further intrusion into the juror's private conversations and affairs than already necessary. *Id.*; *see also* Fed. R. Evid. 611(a)(3) (requiring courts to control questioning to "protect witnesses from harassment or undue embarrassment"). Given that this questioning contravenes the purpose of Federal Rules 606 and 611, the Court will not ask questions aimed at identifying persons with whom the jurors communicated following the trial.

6

**Defendants' Proposed Additional Question 2.**

Defendants also pose six additional types of questions numbered 1-6. (*See* Def. Resp. at 4–5.) Given the Court's construction of their point with respect to the Court's Question 2 as an additional question, those six additional questions are addressed here as Defendants' Proposed Additional Question 2–7. Defendants' Proposed Additional Question 2 seeks to ask Juror No. 4 "in detail about precisely what he saw that caused him to believe photos were being taken, and who he believed was involved." (Def. Resp. at 4.) The Court concludes this more precise inquiry will have little utility; what is most important is what the other jurors heard Juror No. 4 say. As he did not ultimately deliberate in the case, his greatest significance is as an influence on others. To the extent this line of questioning is salient, any more detailed interrogation of Juror No. 4 would be better accomplished through follow-up questions under the structure outlined in the Court's previous orders. (*See* ECF No. 973 at 8.) Defendants are free to pose these questions when the Court solicits follow-ups, and the Court may or may not ask them.

**Defendants' Proposed Additional Question 3.**

Like Defendants' Proposed Additional Question 2, the Court finds that Defendants' Proposed Additional Question 3, which requests more precise follow up on "exactly what [Juror No. 4] told other jurors, which jurors he told, and which jurors were present when he spoke about the incident," (*Id.*), is better reserved for follow-up questioning of Juror No. 4, and for direct questioning of those who heard him and then continued to serve as jurors

**Defendants' Proposed Additional Question 4.**

Defendants' Proposed Additional Question 4 seeks to ask whether prior concerns raised by the jury, and now incorporated into Question 3, affected Juror No. 4's view of January 9, 2018. The Court believes that asking this question will confuse the scope of the present inquiry. These

7

separate concerns were flagged for the Court of Appeals and their remand evidenced a desire for this Court to focus solely on the photo-taking alleged by Juror No. 4. *See United States v. Johnson*, 954 F.3d 174, 183 (4th Cir. 2020) (Motz. J., dissenting) (noting agreement amongst the court that the incidents prior to January 9 did not "trigger[] a presumption of prejudice under *Remmer*"). Asking Juror No. 4 about those prior incidents, even if limited to the context of the events of January 9, 2018, risks unduly conflating the events and frustrating the *Remmer* inquiry. The court feels this risk is unnecessary given that the language added to Question 3 flags these other events as necessary context for Juror No. 4's testimony with respect to the events of January 9, 2018.

**Defendants' Proposed Additional Question 5.**

Defendants' Proposed Additional Question 5 seeks to ask Juror No. 4 "whether any of the other jurors expressed concern about the possibility that jurors were being photographed, and if so, which other jurors did so." (Def. Resp. at 4.) This inquiry is relevant and is incorporated in part into the question added in response to Defendants' Proposed Additional Question 6 (which will now be asked between Question 6 and Question 7). Defendants' Proposed Additional Question 5 also seeks to inquire whether "the jurors discussed the prior incidents in which jurors expressed concern to the Court about the Defendants passing notes and looking at the jurors." (*Id.*) Here again, while follow up regarding the jurors' discussions may be permitted, the Court will not permit follow-up that explicitly prompts Juror No. 4 regarding whether "the jurors discussed the prior incidents in which jurors expressed concern to the Court" for the same reasons outlined with respect to Defendants' Proposed Additional Question 4.

**Defendants' Proposed Additional Question 6.**

Defendants' Proposed Additional Question 6 seeks to ask Juror No. 4 about "the jury's decision to report the incident to the Court; *i.e.*, why they decided to report it, and what they hoped

8

the Court would do about it." (Def. Resp. at 4.) The Court agrees with Defendants that this is an important inquiry. However, as a preliminary matter it will be important to clarify the record on what prompted the jury to come forward in the first instance. The potential picture-taking was initially reported to the Court by AUSA Martinez, who stated that "one of the jurors . . . who I gather was speaking on behalf of the group" had approached the court security officer regarding potential picture-taking. Jan. 9, 2018 Tr. at 134:12–13. Therefore, the Court will add the following line of inquiry between Questions 6 and 7, renumbering accordingly:

> Do you recall if any other jurors shared your concerns regarding potential picture-taking? Did anyone, including yourself, suggest these concerns should be reported to the Court?

### Defendants' Proposed Additional Question 7.

Defendants' final additional question seeks to ask Juror No. 4 "whether the incident would have affected his ability to decide the case—had he remained on the jury—based solely on the evidence presented at trial." (Def. Resp. at 5.) The Court believes this question is unlikely to produce helpful testimony. Defendants posit that Juror No. 4's testimony is the best approximation of the "hypothetical average jur[or]" that they believe controls the ultimate *Remmer* inquiry. (*See id.* at 5–6 (quoting *United States v. Ianello*, 866 F.2d 540, 544 (2d Cir. 1989).) The parties have disputed this premise (*see* ECF No. 918 at 5 n.1), but even assuming Defendants are correct as to the applicability of the "hypothetical average jury" construct, Defendants' Proposed Additional Question 7 remains irrelevant.

First and foremost, to the extent applicable, the hypothetical average jury is a legal tool for *the Court* to employ in assessing the testimony adduced at a *Remmer* hearing. Factual testimony from a single juror who is unlikely to be average (no one juror is), and certainly is not hypothetical, provides the Court nothing of use in making this assessment. If such a deduction is in order, it will

9

be made by the Court from the totality of the information, but without the need for guidance from any one individual on what that deduction should be.

Additionally, even if Juror No. 4's perspective on this question were relevant, it would still be fundamentally distinct from that of the other jurors in this case. Juror No. 4 can only speculate based on his experience as a juror who believed he was being photographed by the Defendants' associates. He left the jury immediately after this incident and is in no position to opine on the subsequent impact on juror impartiality as the trial moved on. In contrast, the remaining jurors' experience was hearing second-hand that someone may have been taking photographs and later being informed by the Court that after an investigation, no such photographs were found. They also continued to serve as jurors. Thus, even setting aside its legal deficiencies, this apples and oranges comparison is of little utility as a factual matter. Accordingly, the Court will not ask Defendants' Proposed Additional Question 7.

### III. Modifications to the Questions for Former Jurors and Former Alternate Jurors Other Than Juror No. 4

**Question 1.** *You are Juror No. _____ is that correct?*

No modifications are proposed by the parties.

**Question 2.** *Between November 20, 2017, and January 25, 2018, you served as a juror [or as an alternate juror] in the trial of the United States v. Gerald Johnson, et al., Case No. JKB-16-0363. I was the judge who presided during that trial. Do you remember your service as a juror in that case?*

The Court will modify Question 2 in the same way as Question 1 for Juror No. 4, in order to identify the attorneys present and their affiliations for the former jurors.

10

**Question 3.** *The trial lasted for many weeks. On January 9, 2018, while the trial was under way, an event occurred which caused the trial to briefly pause. One of your fellow jurors, in the presence of at least some of the rest of the jurors and alternates, expressed concern that persons, perhaps a Defendant's family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. A few minutes later you were interviewed by court staff about that event. A day later, on January 10, 2018, I spoke to the jury in the Courtroom and said: "[O]ne or more jurors had a concern that perhaps someone outside of the jury room, in the courtroom vestibule, or courtroom hallway had photographed or otherwise captured the images of jurors. This matter was investigated after that report was received. The investigation included the examination of a relevant smart phone, camera-type device in the possession of a relevant individual. That investigation revealed that there were no images, films, videos of the sort that I have referred to captured on that telephone." Today, I have some questions for you about this matter.*

Defendants propose modifications to this question that largely track with the modifications suggested with respect to the same question being asked to Juror No. 4. The Court's view on those modifications is the same as above, *see supra* at 2–3, and will be incorporated into this Question 3. However, Defendants also object to the "fifth, sixth, and seventh sentences" which reiterate the curative instruction provided to the jurors on January 10, 2018. (Def. Resp. at 7.)

Defendants' primary objection is that "the Fourth Circuit held this investigation was 'substantively deficient'" and the Court should not now "suggest to the jury that a more effective investigation had been conducted."[1] (*Id.* at 8 (quoting *Johnson*, 954 F.3d at 180–81).) However, the Fourth Circuit also held that what matters in the *Remmer* inquiry is "the effect on the jurors of the perceived external contact. A third party's threat or perceived attempt to take a photograph of a juror may be no less intimidating to that juror than the actual taking of such a photograph." *Johnson*, 954 F.3d at 181. Similarly, what matters with respect to the Court's curative instruction is not the *actual* investigation, but the "effect on the jurors of the perceived [investigation]." *Id.* Just as a "perceived attempt to take a photograph" can intimidate a juror, so too can a perception

---

[1] Defendants also note that "highlighting the investigation, while ignoring other, crucially significant, circumstances, would imperil the Court's ability to assess the 'entire picture' surrounding the Photo Incident." (Def. Resp. at 9.) The Court believes that the modifications it has adopted to both versions of Question 3 resolve any concern that it is presenting an incomplete view of the relevant circumstances.

11

that an investigation uncovered no such photographs permit a juror to put this initial incident out of their mind. *Id.* Put simply, the *Remmer* hearing is not just about facts, but about the jury's perception of those facts.

The jurors were not privy to the alleged deficiencies in the investigation that Defendants raise. Rather, they only received the Court's instruction on the morning of January 10, 2018; that instruction is reproduced, verbatim, in Question 3. The jurors were certainly free to infer from that instruction a robust or meager investigation, and that inference is what is key here. The best way to ascertain that inference is to provide the jurors with the exact same instruction they received on January 10, 2018, and then ask them about their reaction. Accordingly, Defendants' request to omit certain sentences is declined, and Question 3 will be modified to read:

> The trial lasted for many weeks. During the trial, some concerns were raised, such as Defendants passing notes, looking at jurors, and having access to juror information through the juror selection process, known as *voir dire*. The Court addressed these concerns without pausing the trial.
>
> Then on January 9, 2018 an event occurred which caused the trial to briefly pause. One of your fellow jurors, in the presence of at least some of the rest of the jurors and alternates, expressed concern that persons, perhaps a Defendant's family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. We understand that juror may have seen this as a significant event, and may have said something to the effect of "this is really serious." A few minutes later you were interviewed by court staff about that event. A day later, on January 10, 2018, I spoke to the jury in the Courtroom and said: "[O]ne or more jurors had a concern that perhaps someone outside of the jury room, in the courtroom vestibule, or courtroom hallway had photographed or otherwise captured the images of jurors. This matter was investigated after that report was received. The investigation included the examination of a relevant smart phone, camera-type device in the possession of a relevant individual. That investigation revealed that there were no images, films, videos of the sort that I have referred to captured on that telephone." Today, I have some questions for you about the events of January 9, 2018. Specifically, I need your assistance in learning whether the events of that day impacted your ability to continue to be a fair and impartial juror for the remainder of the trial.[2]

---

[2] Although this final sentence was not requested by either party, the Court believes it is necessary to fully contextualize the purpose of the *Remmer* hearing for the former jurors. Particularly given the additional language included in this

12

The lawyers I introduced are not here to ask you questions—only the Court will do that—but they are here to represent the interests of their clients and to propose follow-up questions that the Court may or may not ask you in its discretion.

**Question 4.** *Do you remember this event?*

Although the government does not seek to modify this question, they request that the Court's prophylactic warning regarding Federal Rule of Evidence 606 be given to the former jurors here, as well as at Question 8. (Gov't. Resp. at 2.) The Court agrees that the government's proposed "belt-and-suspenders approach" will limit testimony that violates Rule 606 and will move the current Question 8 to this point in the questioning, renumbering accordingly.

**Question 5.** *Did you see persons taking pictures of the jurors?*

Defendants propose a broader version of Question 5 that not only addresses whether a juror saw people taking pictures, but whether they saw people "engaged in any action that suggested they were taking pictures of the jurors, intended to take such pictures, or might take such pictures?" (Def. Resp. at 10.) While the Court agrees that the Court of Appeals' analysis requires it to go beyond actual picture taking in assessing the events of January 9, it finds that Defendants' proposed phrasing risks giving undue weight to harmless or ambiguous actions—anyone with a smartphone "might take [] pictures." (*Id.*) As such, Defendants' suggestion is adopted in part and Question 5 will be rephrased to:

> Did you see anyone engaged in any action that suggested they were taking pictures of the jurors?

**Question 6.** *Did you hear any juror make statements indicating his or her belief that persons might be taking pictures of jurors? If so, what do you remember hearing?*

No modifications are proposed by the parties.

---

introduction about other concerning events and the significance of January 9, immediately confirming for the former jurors the nature of the instant inquiry will be important.

13

**Question 7.** *Did you hear or participate in discussion among the jurors about the possibility of picture-taking? Can you remember what was said?*

No modifications are proposed by the parties.

**Question 8.** *As you respond to the next questions, please be careful not to tell us about the jury's deliberations on the defendants' guilt or innocence, or about how you reached your verdict.*

Question 8 is a prophylactic explanation to the jury of the line drawn by Federal Rule of Evidence 606. Defendants suggest modifying Question 8 to more effectively demarcate permissible and impermissible testimony. Defendants' suggestion helps clarify the line and will be adopted in full by the Court. The Court will also provide additional guidance regarding the definition of "deliberations" to ensure that the juror understands the line that is being drawn by the instruction. The original Question 8 will also be provided to the jury, as noted above, prior to Question 4.

**Question 9.** *After any discussion about possible picture taking on January 9 and 10, did you feel intimidated by anything that had occurred?*

Both parties suggest modifications to Question 9. Defendants point out that although a juror who was intimidated by the events of January 9th would not be impartial, a juror who was *not* intimidated may still not be impartial. (Def. Resp. at 12.) This point is well taken. However, given the myriad phrasings for a lack of impartiality, the Court believes the best way to query a juror's impartiality following the alleged photo-taking is by beginning with a series of discrete initial questions, in this case Questions 9 and 10. Then, if a juror testifies in response to those questions that he or she was not intimidated, was able to remain impartial and kept an open mind, there may be little left into which to inquire. Nonetheless, Defendants will be permitted to propose further inquiries that might reveal any other plausible forms of prejudice arising from the alleged picture-taking. Given the juror-specific nature of these inquiries, the Court believes they should, at most, be reserved for possible follow-up questioning.

14

Similarly, the Government proposes that any juror who answers affirmatively to Question 9 should be asked "whether the curative statement provided by the Court on January 10, 2018 (and quoted in full in proposed Question 3) assisted him or her in putting the alleged picture-taking incident behind them." (Gov't. Resp. at 2 (citing *United States v. Hines*, 717 F.3d 1481, 1491 (4th Cir. 1983).) While again, this point is well taken, the Court believes that anticipating contingent questions ahead of the juror's testimony indulges speculation. Given that the parties will be permitted to propose appropriate follow-up questions at the hearing, deciding now to include those follow-ups is unnecessary and may place the Court in the position of asking questions that, in the context of live testimony, are immaterial or counterproductive. Accordingly, Question 9 will remain unmodified.

**Question 10.** *Were you able to remain an impartial juror, and were you able to keep an open mind, as the trial continued after that?*

Defendants suggest modifying Question 10 to more broadly ask whether a juror was "able to put the incident out of your mind, or did you continue to think about the incident after it occurred?" (Def. Resp. at 14.) The Court finds this version of Question 10 far too simple to effectively assess the effect of the events of January 9, 2018 on the former jurors.

The disparity between the Court and Defendants on Question 10 appears to stem from a disagreement on the proper scope of the *Remmer* inquiry. Defendants argue this inquiry is limited to "whether any reasonable possibility that the jury that convicted Defendants was influenced by extraneous information." (*Id.* at 13.) This influence, in their view, can be *de minimis*, as "[a] juror who considered the Photo Incident in arriving at his or her verdict . . . clearly would not have been impartial." (*Id.*) This standard is plainly incorrect.

In *Basham*, the Fourth Circuit outlined the factors to be considered by a court in determining whether the government had rebutted *Remmer's* presumption of prejudice. *United States v.*

15

*Basham*, 561 F.3d 302 (4th Cir. 2009). It explained that "[c]ourts looks at a variety of factors in determining if this standard has been met, including . . . the strength of the Government's case." *Id.* at 320. If Defendants' view was correct, consideration of the government's case would be inapposite to the *Remmer* inquiry; no amount of evidence could absolve a juror's fleeting thought regarding an extrinsic contact. While the Court does not yet take a view on the precise quantum of influence that is necessary to violate Defendants' right to an impartial jury, the position expressed in the pending motion cannot be squared with plain Fourth Circuit precedent and must be rejected.

So too must the Court reject Defendants' proposed Question 10 which asks the simple binary of whether the juror did or did not continue to think about the events of January 9, 2018 during the trial. While the fact that a juror continued to remember the incident *could* signal an effect on that juror's impartiality, it is far from dispositive on that point. Locking a former juror into testimony that they indeed remembered the extraneous event as the trial moved on will not assist the Court in discerning whether there was problematic impact and influence. Therefore, this unduly reductive question will not provide sufficient information to answer the correctly articulated *Remmer* inquiry. For this additional reason, it will not be posed.

**Question 11.** *Do you believe the events of January 9 and January 10, 2018 left you unable to continue to serve as a fair and impartial juror in the case, or unable to fully consider the evidence and arguments presented by both sides with an open mind?*

No modifications are proposed by the parties.

### IV.   Proposed Additional Questions for Former Jurors and Former Alternate Jurors Other Than Juror No. 4

While neither party explicitly proposes additional questions, beyond those already addressed above, Defendants briefing suggests a few additional questions or follow-up questions. (*See* Def. Resp. at 6, 9, 10, 13–14.) The substance of these questions has been addressed in Section

II, and the Court sees no material difference between Juror No. 4 and the rest of the former jurors that requires a modification of that analysis. As with Defendants' Proposed Additional Question 6 for Juror No. 4, the following question will be added between Questions 6 and 7, renumbering accordingly:

> Do you recall which jurors raised concerns regarding potential picture-taking? Did anyone, including yourself, suggest these concerns should be reported to the Court?

In conclusion, the Court acknowledges the briefing by both parties which has assisted in refining the questions that initially will be posed to the former jurors at the forthcoming *Remmer* hearing. These questions will best position the Court to resolve the ultimate *Remmer* inquiry, and to respect the limitations on appropriate means to that end set by Federal Rules of Evidence 606 and 611. While the *Remmer* context creates some conflicts between these means and ends, the Court believes that, with the parties' help, it has found an effective balance between the evidentiary limits and evidentiary burdens posed by this case. That balance is reflected in the list of questions attached to this Memorandum and Order which reflects the Court's originally posed Questions, as modified and supplemented by the Parties' suggestions.

Last, because the Court has, for the moment, declined to include a number of the Parties' proposed additional questions, it is helpful to reiterate the structure of the forthcoming *Remmer* hearing. The questions, as modified and outlined in this Order will be initially posed to the jurors. As the Court poses these questions, it will ask any follow-up questions that it deems necessary, considering (among other things) the various follow-up points raised by the Parties here. Once the initial questions and the Court's *sua sponte* follow-ups are exhausted, the Court will solicit additional questions from the Parties. Provided a juror has supplied an answer or answers that reasonably invite further inquiry, then, within that scope, the Parties are free to urge (or re-urge) a question not contemplated herein, or contemplated and rejected herein. Like the Parties, the Court

17

will be listening carefully to the jurors' answers to the questions framed in this pre-hearing process, and will be ready to approve and ask follow-ups that it determines will assist it in making the ultimate determination of whether the government has shown that "all the jurors remained impartial throughout the case, as guaranteed by the Sixth Amendment." *Johnson*, 954 F.3d at 182.

Accordingly, it is ORDERED that the questioning of the former jurors and alternates during the upcoming *Remmer* hearing will proceed in accordance with the contents of the two attachments, and in alignment with the principles and plan set out in this Memorandum.

DATED this 6 day of May, 2021.

BY THE COURT:

James K. Bredar
Chief Judge