IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIM. NO. JKB-16-0363** |
| **GERALD THOMAS JOHNSON,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Before the Court is the Government's Motion for Partial Reconsideration (ECF No. 999) of this Court's Memorandum and Order establishing the final lists of questions to be posed to the former jurors at the forthcoming *Remmer* hearing. (ECF No. 998.) This motion seeks to have the Court excise one sentence from the Question 3 that will be posed to the former jurors other than Juror No. 4. (*See* ECF No. 998 Ex. 2.) Defendants have filed a response to this motion, wherein they oppose this modification. (ECF No. 1002.) Having considered the parties' briefing, the Government's motion is GRANTED IN PART, and the questions to the former jurors will be modified consistent with this order.

"Question 3" is a bit of a misnomer, it is not a question, but rather a statement that the Court will provide to the former jurors to reorient them to the events that necessitated the forthcoming *Remmer* hearing. Following the Court's prior order (ECF No. 998), Question 3 read in full:

> The trial lasted for many weeks. During the trial, some concerns were raised, such as Defendants passing notes, looking at jurors, and having access to juror information through the juror selection process, known as *voir dire*. The Court addressed these concerns without pausing the trial.

1

> Then on January 9, 2018 an event occurred which caused the trial to briefly pause. One of your fellow jurors, in the presence of at least some of the rest of the jurors and alternates, expressed concern that persons, perhaps a Defendant's family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. We understand that juror may have seen this as a significant event, and may have said something to the effect of "this is really serious." A few minutes later you were interviewed by court staff about that event. A day later, on January 10, 2018, I spoke to the jury in the Courtroom and said: "[O]ne or more jurors had a concern that perhaps someone outside of the jury room, in the courtroom vestibule, or courtroom hallway had photographed or otherwise captured the images of jurors. This matter was investigated after that report was received. The investigation included the examination of a relevant smart phone, camera-type device in the possession of a relevant individual. That investigation revealed that there were no images, films, videos of the sort that I have referred to captured on that telephone." Today, I have some questions for you about the events of January 9, 2018. Specifically, I need your assistance in learning whether the events of the day impacted your ability to continue to be a fair and impartial juror for the remainder of the trial.
>
> The lawyers I introduced earlier are not here to ask you questions—only the Court will do that—but they are here to represent the interests of their clients and to propose follow-up questions that the Court may or may not ask you in its discretion.

The Government's motion for reconsideration focuses solely on the sentence in the middle of the second paragraph where the Court states that "[w]e understand that juror may have seen this as a significant event, and may have said something to the effect of 'this is really serious.'" (Mot. for Reconsideration at 2.) They request that this statement be made only to Juror No. 4 and Juror No. 2.

This sentence stems from the Court's contemporaneous questioning of the jurors, during which Juror No. 2 stated that Juror No. 4 had "told everyone" that he had seen two persons taking photos and opined "guys this is really serious, they're taking pictures of us." *See* Jan 9, 2018 Tr. at 155:11–15. Juror No. 2's report was not corroborated by any other juror. In its initially proposed list of questions, the Court did not include a reference to this event. (*See* ECF No. 983.) In their proposed modifications, Defendants argued that the Court's original phrasing of Question 3, combined with its omission of this language, could lead to the impression that

2

Juror No. 4's reaction to the perceived picture-taking was far more restrained than it actually was. (ECF No. 989 at 3.) They proposed the following language be added to Question 3 to provide appropriate context:

> It was reported to the Court that during a break in the trial, one of the jurors told other jurors that he had seen someone – perhaps the defendants' family members – photographing jurors as they passed through the vestibule at the entrance to the courtroom and the jury room, and that he had told other jurors that this was "really serious."

(*Id.*) Ultimately, the Court "agreed that it should expand this question to provide necessary context," but given the origins of the "really serious" language, declined to "affirmatively ascribe these words to Juror No. 4." (ECF No. 998 at 3–4.) Due to this, it adopted a modified version of Defendants' proposed text that it believed provided necessary context, without placing an undue premium on nested hearsay.

The Government argues that while the Court struck this balance correctly for Jurors No. 4 and No. 2, the current language is inappropriate in questioning the remaining jurors. They contend that while the Court formally does not ascribe this language to Juror No. 4, it functionally does so "by tak[ing] the words of one juror . . . and put[ting] them in front of other jurors who . . . did not hear the alleged remark at all." (Mot. for Reconsideration at 2.) Worse, it does so "with the imprimatur of the Court." (*Id.*) They analogize these concerns to the customary bar on leading statements in direct examination, Fed. R. Evid. 611(c), and contend that the entire sentence (not just the speculative "really serious" language) should be removed from Question 3.

Defendants disagree with this modification and would retain Question 3 in its current form. They point to evidence contemporaneous with the events of January 9, 2018 that reflects that Juror No. 4 may have made his statements regarding perceived photo-taking in front of the entire jury, (ECF No. 1002 at 2), and that the lack of corroboration from other jurors was of the photo-taking,

3

not Juror No. 4's report. (*Id.*) They also believe the Court's proposed language is sufficiently conditional to avoid the impression that the proposed question bears the Court's imprimatur. (*Id.*) They conclude that the current phrasing of Question 3 is appropriate because "[i]n sum, it is extraordinarily unlikely that, if any juror did view the event as not 'serious,' that juror may be misled on that score by the Court's statement that Juror No. 4 'may have' described it as such." (*Id.*)

The Court believes that a median position appropriately addresses the concerns raised by both parties. While the Government is correct that leading statements are generally disfavored, that is not so where they are "necessary to develop the witness's testimony." Fed. R. Evid. 611(c). Here, given the significant time that has elapsed since the events at the heart of this hearing, the Court continues to believe that some backgrounding is necessary to effectively probe the former juror's recollection. That said, the Court also agrees with the Government that the current Question 3 leads too far.

On reconsideration, the Court believes that the "really serious" language gives undue weight to a statement that was not corroborated contemporaneously by any other juror. Defendants believe this lack of corroboration derives from the fact that the questions posed to the jurors on January 9, 2018, were aimed at corroborating what Juror No. 4 *saw* not what he *said*. (ECF No. 1002 at 2.) However, the questioning on January 9 elicited from at least three jurors that Juror No. 4 said something, (*See* Jan. 9, 2018 Tr. at 155–57), yet no juror besides Juror No. 2 mentioned the precise language used by Juror No. 4. Further, none of the remaining thirteen jurors and alternates, mentioned any statement by Juror No. 4 at all. Given this sparse corroboration, the Court now believes that placing this language affirmatively into the background statement gives it undue credence.

That said, the Court is not convinced that it should remove the sentence that contains the "really serious" language *in its entirety*, as requested by the Government. (ECF No. 999 at 2.) While the Court may be skeptical of whether other jurors heard Juror No. 4 say that things were "really serious," it is not similarly circumspect about the more general language regarding the fact that Juror No. 4 "may have seen this as a significant event." Four things convince the Court that the other jurors would have likely held this impression. First, while other jurors did not corroborate the precise language used by Juror No. 2, they did note that Juror No. 4 had made a statement to the remainder of the jury. Second, at least one juror reported Juror No. 4's statement to a court security officer. Jan. 9, 2018 Tr. at 134. Third, that report caused the Court to pause the trial to question each juror, something that had not occurred when jurors had raised other concerns noted in Question 3. Last, Juror No. 4 was excused immediately following the Court's questioning of the other jurors. Taken together, it is far less speculative to conclude that Juror No. 4 saw the events of January 9 as significant, even if the precise language he used to express his concerns may be unclear. While the other jurors may not have shared that impression it would be misleading to imply that it was not viewed as significant by Juror No. 4.

In conclusion, the Court believes that Juror No. 4 perceived the event as significant enough to raise with his fellow jurors and the Court. The other jurors could also readily infer that this was *his perception*. The Court's conditional language further reinforces that Juror No. 4 "may have seen this as a significant event" without rendering or implying judgment on whether the event was in fact serious, which remains the purpose of the *Remmer* hearing.

Accordingly, it is ORDERED that Question 3 for the former jurors, other than Juror No. 4, is modified to read as follows:[1]

---

[1] The Government's motion only requested modification of the language as posed to Jurors other than Juror No. 2 and Juror No. 4. However, the Court will remove the relevant language for all jurors other than Juror No. 4. As the

> The trial lasted for many weeks. During the trial, some concerns were raised, such as Defendants passing notes, looking at jurors, and having access to juror information through the juror selection process, known as *voir dire*. The Court addressed these concerns without pausing the trial.
>
> Then on January 9, 2018 an event occurred which caused the trial to briefly pause. One of your fellow jurors, in the presence of at least some of the rest of the jurors and alternates, expressed concern that persons, perhaps a Defendant's family members, might be taking pictures of the jurors as they passed through the vestibule at the entrance to the courtroom and the jury room. We understand that juror may have seen this as a significant event. A few minutes later you were interviewed by court staff about that event. A day later, on January 10, 2018, I spoke to the jury in the Courtroom and said: "[O]ne or more jurors had a concern that perhaps someone outside of the jury room, in the courtroom vestibule, or courtroom hallway had photographed or otherwise captured the images of jurors. This matter was investigated after that report was received. The investigation included the examination of a relevant smart phone, camera-type device in the possession of a relevant individual. That investigation revealed that there were no images, films, videos of the sort that I have referred to captured on that telephone." Today, I have some questions for you about the events of January 9, 2018. Specifically, I need your assistance in learning whether the events of that[2] day impacted your ability to continue to be a fair and impartial juror for the remainder of the trial.
>
> The lawyers I introduced earlier are not here to ask you questions—only the Court will do that—but they are here to represent the interests of their clients and to propose follow-up questions that the Court may or may not ask you in its discretion.

Other than this question, the remaining questions and principles governing the forthcoming *Remmer* hearing remain unmodified. The questions, as modified, are attached as Exhibits 1 and 2 to this Order.

---

Court explained with respect to Defendants' Proposed Additional Question 3, "more precise follow-up" on the statements made by other jurors is best reserved for possible follow-up, rather than preliminary, questioning. (ECF No. 998 at 7.) However, because the Court believes it is important to ascertain whether Juror No. 4 recalls making this or a similar statement, it will retain that language in the questions for Juror No. 4.

[2] For clarity, the Court has also changed "the day" to "that day" in Question 3.

DATED this 7 day of May, 2021.

BY THE COURT:

*/s/ James K. Bredar*
James K. Bredar
Chief Judge